UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                                                          Case No. 24-11047-LMI

NIR MEIR                                                                                  Chapter 7

_____Debtor._____/

### NOTICE OF RULE 2004 EXAMINATION TO DEBTOR, NIR MEIR

To:   Nir Meir
      c/o Peter E. Shapiro, Esq.
      8551 West Sunrise Boulevard, Suite 300
      Plantation, FL 33322

☐ **Testimony:** Pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Rule 2004-1, **[examining party]** will examine **[witness]** under oath on **[date]** at **[time]**. The examination will be conducted **[at (location)]** **[via video conference or telephone (include registration or dial-in details)]**, and will be recorded by **[method of recording]**. The examination may continue from day to day until completed.

☒ **Production:** Pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Rule 2004-1, **Creditor, Ranee A. Bartolacci** requests that **Debtor, Nir Meir** produce the documents, electronically stored information, or objects described on the attached **Schedule A**, who must permit inspection, copying, testing, or sampling of the materials on **May 26, 2025 at 1:00 p.m.** (the **"Response Date"**) at **Salazar Law, LLP, c/o Luis Salazar, Esq. 2121 SW 3rd Avenue, Suite 200, Miami, Florida 33129 (Luis@Salazar.Law, with copy to Lee-Sin@Salazar.Law)**.[1]

Ms. Bartolacci reserves the right to schedule and notice a Rule 2004 Examination for testimony of the Debtor at a later date. If the examinee receives such notice less than 14 days before the scheduled examination date, the examination will be rescheduled upon timely request to a mutually agreeable time. The scope of the examination will be as described in Bankruptcy Rule 2004. Pursuant to Local Rule 2004-1 no order is necessary.

---

[1] Ms. Bartolacci reserves the right to amend, modify, or otherwise supplement this Notice of Rule 2004 Examination to Debtor, Nir Meir.

Dated: May 12, 2025

Respectfully submitted,

**SALAZAR LAW**
*Counsel for Creditor, Ranee Bartolacci*
2121 SW 3rd Avenue, Suite 200
Miami, Florida 33129
Telephone: (305) 374-4848
Facsimile: (305) 397-1021
Email: Luis@Salazar.Law
Email: Ceide@Salazar.Law
Email: Lorenzo@Salazar.Law
Secondary Email: Lee-Sin@Salazar.Law

By: */s/ Luis Salazar*
     Luis Salazar
     Florida Bar No. 147788
     Jose Ceide
     Florida Bar No. 15937
     Lorenzo Lorenzo, Jr.
     Florida Bar No. 88718

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 12, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all parties identified on the Service List attached to the original hereof via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                             */s/ Luis Salazar*
                                                              Luis Salazar

## SERVICE LIST

Electronic Notice List:

- **Jonathan M Davidoff**   jonathan@davidofflawfirm.com
- **Drew M Dillworth**   ddillworth@stearnsweaver.com, ddillworth@ecf.axosfs.com;dmd@trustesolutions.net;mfernandez@stearnsweaver.com;dmd@trustesolutions.net;fsanchez@stearnsweaver.com;jless@stearnsweaver.com
- **Jordi Guso**   jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.courtdrive.com
- **Ingrid Tatiana Medina Rodriguez**   trodriguez@zeklaw.com
- **James B Miller**   bkcmiami@gmail.com
- **Office of the US Trustee**   USTPRegion21.MM.ECF@usdoj.gov
- **Luis Salazar**   Luis@Salazar.Law, luis-salazar-4791@ecf.pacerpro.com;Ceide@salazar.law;Lee-Sin@Salazar.Law;Suarez@Salazar.Law;Lorenzo@Salazar.Law;MSalazar@Salazar.Law
- **Peter E. Shapiro**   pshapiro@shapirolawpa.com, shapiro.peterr101923@notify.bestcase.com
- **Michael Erik Sims**   msims@zeklaw.com, 9574886420@filings.docketbird.com
- **Mark E Steiner**   MES@lgplaw.com, pm@lgplaw.com

SCHEDULE A

I. **Definitions.**

1. "**You**," "**Your**," "**Debtor**," or "**Meir**" shall mean Debtor Nir Meir and any agents, attorneys, representatives, of Meir; any limited liability company, corporation or professional association, or other entity in which Meir owns or has owned at least 5% of the voting stock or other ownership interest at any time since January 1, 2017, including but not limited to, any general partnership or limited partnership of which Meir is or has been a general or limited partner since January 1, 2017; and any trust in which Meir owns or has owned at any time between January 1, 2017 and the present date and any other business entity where Meir has had any ownership interest at any time since January 1, 2017.

2. "**Bartolacci**" shall mean Creditor Ranee A. Bartolacci, former spouse of Meir.

3. "**Meir Bankruptcy**" means and refers to the above-referenced Chapter 7 bankruptcy case styled *In re: Nir Meir,* Case No. 24-11047-LMI, pending in the United States Bankruptcy Court, Southern District of Florida, Miami Division.

4. "**Communication**" means and refers to every manner (including, but not limited to visually; orally; in writing; by digital, analog, electronic, magnetic, telephonic, or other mechanical means; or otherwise) of transmitting or receiving facts, information, opinions, observations, or thoughts.

5. "**Document**," "**Documents**," or "**Documentation**" shall mean and refer to all original, all drafts, and all copies of any document or record in Your custody, possession or control, including, but not limited to, any printed, handwritten, photo stated, photographed, recorded, taped, transcribed, punched, electronic, filmed, graphic, computer generated or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any non-identical copy that may be different in any way from the original (whether by interlineation, receipt, stamp, notation, indication or copy sent or received, because of notes made on or attached to such copy or otherwise) of any and all writings, correspondence, letters, telegrams, telex communications, cables, notes, notations, papers, newsletters, memoranda, inter-office communications, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings or other memorials or any type of personal or telephone conversations, meetings or conferences (including, but not limited to, telephone bills and long distance charge slips), reports, analyses, evaluations, estimates, projections, forecasts, receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment books, stenographer's notebooks, transcripts, ledgers, registers, worksheets, journals, statistical records, cost sheets, summaries, lists, tabulations, digests, canceled or un-canceled checks or drafts, vouchers, charge slips, invoices, purchase orders, hotel charges, accountant's reports, financial statements, newspapers, periodical or magazine materials, and any material underlying, supporting or used in the preparation of any documents.

6. The term "document" shall further include, without limitation, all ESI, electronic and magnetically stored forms of data, and Communications. Each non-identical copy of a

document (whether different from the original because of stamps, indications of recipient, handwritten notes, marks, attachment to different documents, or for any other reason) is a separate document to be produced. Each document that is attached by staple, clip or otherwise to a document requested herein, or referred to as an exhibit, appendix, schedule, amendment, rider, or supplement to a requested document, shall also be produced (attached in the same manner as the original) regardless of whether the production of that document is otherwise requested herein. Each request herein for documents to be produced requires production of the documents in their entirety without abbreviation or expurgation.

7. **"ESI"** means any electronically stored information, including emails (and attachments thereto), text messages, "What's App" messages, writings, drawings, graphs, charts, photographs, documents, sound recordings, images, and other data or data compilations-stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form as defined in Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence. All ESI is to be produced in a native format.

8. **"Person"** means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, business trust, or other business enterprise, governmental body, or agency, legal or business entity, or group of natural persons, or other entity, whether sui juris or otherwise and includes both the singular and plural.

9. **"Possession, Custody, or Control"** as used herein shall have the same meaning as in Rule 34(a) of the Federal Rules of Civil Procedure.

10. **"Support," "Evidence," "Evidencing," "Relate to," "Relating to," "Related to," "Referred to," "Concerning," "Pertaining to," "Involving"** and **"Regarding"** mean and refer to anything which directly, or indirectly, concerns, consists of, pertains to, reflects, evidences, describes, sets forth, constitutes, contains, shows, underlies, supports, refers to the manner, is or was used in the preparation of, appended to, legally, logically or factually connected with, proves, disproves, or tends to prove or disprove.

11. **"Transfer"** or **"transfer"** shall mean and refer to every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of an equity of redemption.

12. **"And"** and **"Or"** shall be interpreted in each instance as meaning **"And/Or"** to encompass the broader of the two possible constructions and shall not be interpreted disjunctively to exclude any information or documents otherwise within the scope of any Request.

13. **"Any"** and **"All"** shall be construed to bring within the scope of this request any information which might be construed to relate to the subject matter of the request.

14. Any pronouns used herein shall include and be read and applied as to encompass the alternative forms of the pronoun, whether masculine, feminine, neuter, singular or plural, and shall not be interpreted to exclude any information or documents otherwise within the scope of any Request.

15. Each definition as set forth in Bankruptcy Code Section 101 and Bankruptcy Rule 9001 is incorporated herein by reference.

II. **Instructions.**

1. In producing Documents, You shall produce Documents in full, without abridgement, abbreviation or editing of any sort. In producing Documents, You shall produce Documents in full, without abridgement, abbreviation or editing of any sort, including all "metadata" relating to such Documents. For purposes of this Instruction, the term "Metadata" shall mean the data about the data otherwise referred to as the fingerprint of the document. All available fields of metadata should be included.

2. This document request is continuing in nature. If or when new knowledge or information comes to Your attention, the information supplied in the answers to the document request shall be supplemented forthwith pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, and You are required to produce such additional documents.

3. For each Request herein, You shall produce Documents in Your possession, custody, or control, which shall include but be limited to, Documents, objects or articles described that are in Your possession or that You have the right to secure the original or a copy from another person or entity. The fact that Your investigation is continuing, or discovery is incomplete is not an excuse for Your failure to respond to each request as fully and completely as possible. Your responses should consist of information known to You through Yourself, Your agents, Your attorneys, Your employees, or Your representatives. All Documents produced pursuant to this request are to be produced as they are kept in the usual course of business and shall be organized and labeled (without permanently marking the item produced) to correspond with the categories of each numbered request hereof. If copies or drafts exist of a Document, the production of which has been requested herein, produce, and submit for inspection and copying each and every copy and draft which differs in any way from the original Document or from any copy or draft.

4. If any of the documents cannot be produced in full or altogether, produce to the extent possible, specifying the reasons for the inability to produce the document or the remainder of same.

5. If at any time You had possession, custody, or control of any Document requested herein, and such Document has been lost, destroyed, discarded, or is not presently in Your possession, these Documents shall be identified as completely as possible, including:

A. The names of the authors of the Document;

B. The names of the persons to whom the documents or copies were sent;

C. The date of the Document;

D. The date on which the Document was received by each addressee, copyee, or its recipients;

E. A description of the nature and subject matter of the Document that is as complete as possible;

F. The date on which the Document was lost, discarded or destroyed; and

G. The manner in which the Document was lost, discarded or destroyed.

6. If You object to furnishing any requested document on the ground of privilege, immunity, work product or otherwise, the deponent shall number such Documents, hold them separately, and retain them intact pending a ruling by the Court on the claimed privilege. In addition, the deponent shall provide a statement, signed by an attorney representing You, setting forth as to each such document:

A. The names of the senders of the Document;

B. The names of the authors of the Document;

C. The names of the persons to whom the Document or copies were sent;

D. The job title of every person named in subparagraphs 1, 2 and 3 above;

E. The date of the Document;

F. The date on which the Document was received by each addressee, copyee or its recipient;

G. A brief description of the nature and subject matter of the Document; and

H. The statute, rule or decision which is claimed to give rise to the privilege.

The requirements set forth in Subsection F above, shall not constitute a waiver of Your obligation, or the requesting party's right, to demand a timely and legally sufficient privilege log, or the remedies for Your non-production of such privilege log.

7. Notwithstanding Your objection, You must disclose any objected to evidence containing non-objectionable matter which is relevant and material to these discovery requests, but You may withhold the portion for which You assert the objection, subject to further request or motion, provided that You furnish the above-requested identification.

8. If You cannot, after exercising due diligence to secure or produce the document(s) requested, You must identify which Request(s) that You do not have any responsive documents for, and answer the request for production to the fullest extent possible, specifying Your inability to produce the document(s), providing the identity of the person who has possession, custody, or control of the requested document(s).

9. All words in this request for production shall have their plain and ordinary meanings unless specifically defined herein above in Part I of this Request.

10. Copies of documents which are identical duplicates of other documents which have already been produced for inspection and copying in this action need not be produced again, except that the duplicates must be produced if handwritten or any other type of notes or similar intelligence appear thereon or are attached thereto, including markings on slips indicating the routing of the document to individuals or organizations.

11. The singular and plural forms shall be construed interchangeably so as to bring within the scope of this document request any information which might otherwise be construed as outside their scope.

12. All other names or terms herein not specifically defined or identified shall have the same meaning as is commonly understood and referred to by and among the parties.

13. All ESI is to be produced in a native format.

14. All responsive documents which exist in a physical format shall be mailed or otherwise delivered to **Salazar Law c/o Luis Salazar, Esq., 2121 S.W. 3rd Avenue, Suite 200, Miami, Florida 33129, Email: Luis@Salazar.law, with copy to Lee-Sin@Salazar.Law,** on or before the Response Date, unless otherwise agreed to by the parties, or as ordered by the Court. All responsive documents which exist in an electronic format (i.e., ESI) may either be delivered to the foregoing on a physical media (*e.g.*, CD, DVD or USB drive) or transmitted via electronic delivery client (*e.g.*, ShareFile). Please contact the undersigned to facilitate electronic delivery.

### III. Documents to be Produced.

1. The Debtor's tax returns from 2020 to present, including supporting documents for all returns.

2. All documents referring, reflecting or relating to the Debtor's sale of his Southampton Property (as described, defined and testified to in the Debtor's Initial Meeting of Creditors) including without limitations:

   a. Records of the property's purchase by the Debtor or any corporate entity owned or controlled by the Debtor;

   b. Deeds reflecting transfer of the property to the Debtor and/or the Debtor's company and transfer by the Debtor to the subsequent purchaser;

   c. the sale contract by which the Debtor and/or the Debtor's company sold the property;

   d. Closing records for the Debtor's sale of the property; and

   e. Records of disbursements of any proceeds from the Debtor's sale of the property.

3. Operating agreements, ownership agreements, shareholder's agreement, and any other governing documents and corporate resolutions for each company listed in the Debtor's schedules including, without limitation:

   a. EAM 40 Meadow Lane LLC;

   b. EZL 40 Meadow Lane LLC;

   c. EAM Partners LLC;

   d. KB Capital LLC;

   e. NMD International LLC;

   f. Karma Four Ventures, NSD, LLC;

   g. 10NSD Manager LLC; and

   h. HFZ Capital Group LLC.

4. Records of distributions to Debtor from HFZ Capital Group LLC, or its related and/or affiliated entities.

5. Documents supporting Debtor's claims against third parties listed in the Debtor's Schedule A, Part 33-34 (ECF No. 1, Page 14-15).

6. Copies of the Debtor's retainer agreements with the following law firms and/or attorneys:

    a. Davidoff Law Firm, PLLC;

    b. Jonathan Davidoff;

    c. Davidoff Hutcher & Citron, LLP;

    d. Rosen Law LLC;

    e. PM Law PC;

    f. Womble Carlyle Sandridge & Rice, LLP.

7. Records of sales of the Debtor's personal property since January 1, 2020 through present, including without limitation:

    a. Wine sales;

    b. Watch sales;

    c. Car sales;

    d. Art sales;

    e. Gold sales; or

    f. Collectibles of any kind.

8. All records of the Debtor's Cryptocurrency accounts or wallets, including but not limited to, Robinhood, Gemini, Coinbase, Exodus, Charles Schwab, and any hard-wallet, or soft-wallet, for the period of January 1, 2020 through present.

9. All account records, including bank statements, cancelled checks, deposits, opening applications and signatory documents, for each bank or financial account which is in the name or joint name of the Debtor, where Debtor is an authorized signor or where Debtor has an interest of any kind, for the period of January 1, 2020 through present.

10. Trust agreements for any trusts created by, or for the benefit of the Debtor and or his family.

11. Documentation of any payments to creditors since November 1, 2023 to present.

12. Any and all records of loans from friends, acquaintances, or family since January 1, 2020 through present, including promissory notes, terms, and communications related to such loans, and including a list of each person or entity who made such loans.

13. Documents reflecting the assignment of KB Capital LLC, Allegiant and Sunrise entities to YH Lex.

14. Documentation of any payments and/or transfer, sale, or assignment of any real or personal property to YH Lex.

15. Full copies of the Debtor's French and Israeli passports, and any other passport issued by any other country in the name of the Debtor, including endorsements or stamps.

16. Any documents referring, reflecting or related to any storage units owned, rented or leased by the Debtor, or on the Debtor's behalf.

17. Any and all documents, records, and communications referring to, relating to, or reflecting the purchase of gold or other collectibles by the Debtor, on behalf of the Debtor, or at the direction of the Debtor. This includes, but is not limited to:

   a. Purchase agreements;

   b. Invoices and receipts;

   c. Bank or credit card statements reflecting such purchases;

   d. Communications (including emails, letters, and text messages) regarding such purchases;

   e. Internal memos or notes;

   f. Contracts with dealers or brokers;

   g. Appraisals or valuations any purchased items.

18. Any and all documents, records, and communications referring to, relating to, or reflecting the sale of gold or other collectibles by the Debtor, on behalf of the Debtor, or at the direction of the Debtor. This includes, but is not limited to:

   a. Sales agreements or contracts;

   b. Invoices and receipts for sales;

   c. Bank statements or other records of payment received;

   d. Communications with purchasers, brokers, or dealers (including emails, texts, letters, or messages);

   e. Listings or advertisements related to such sales;

   f. Internal records or notes regarding the sales;

   g. Appraisals or valuations prepared in connection with the sales.

19. Any and all documents, records, and communications referring to, relating to, or reflecting the purchase of wine or other collectibles by the Debtor, on behalf of the Debtor, or at the direction of the Debtor. This includes, but is not limited to:

   a. Purchase agreements;

   b. Invoices and receipts;

   c. Bank or credit card statements reflecting such purchases;

    d.    Communications (including emails, letters, and text messages) regarding such purchases;

    e.    Internal memos or notes;

    f.    Contracts with dealers or brokers;

    g.    Appraisals or valuations any purchased items.

20.    Any and all documents, records, and communications referring to, relating to, or reflecting the sale of wine or other collectibles by the Debtor, on behalf of the Debtor, or at the direction of the Debtor. This includes, but is not limited to:

    a.    Sales agreements or contracts;

    b.    Invoices and receipts for sales;

    c.    Bank statements or other records of payment received;

    d.    Communications with purchasers, brokers, or dealers (including emails, texts, letters, or messages);

    e.    Listings or advertisements related to such sales;

    f.    Internal records or notes regarding the sales;

    g.    Appraisals or valuations prepared in connection with the sales.